Myrna Joyce BEIT, a minor by her next friend, Max Beit, Max Beit and Connie Manno, Appellants,

v.

UNITED STATES of America, Appellee.

No. 17176.

United States Court of Appeals Fifth Circuit.

Nov. 5, 1958.

Hylan H. Kout, Krystow & Johnson, Miami Beach, Fla., for appellants.

David C. Clark, Jr., Richard R. Booth, Asst. U. S. Attys., James L. Guilmartin, U. S. Atty., Miami, Fla., for appellee.

Before HUTCHESON, Chief Judge, and CAMERON and BROWN, Circuit Judges.

JOHN R. BROWN, Circuit Judge.

In the final analysis this is but another Federal Torts Claims Act suit in which the losing party seeks a retrial of facts at our hands, ignoring or forgetting that as a case mandatorily tried by the Court without a jury, the Judge's findings come here with the buckler and shield of the clearly erroneous concept of F.R.Civ.P. 52(a), 28 U.S.C.A. To be sure the unsuccessful plaintiffs-appellants do try earnestly to cast it in the form of an erroneous understanding and application of the idea of unvoidable accident. The District Court after a trial in which nearly all testified in person found that "the testimony in these cases is very conflicting" and concluded that this intersectional collision happened without

the negligence of either of the parties and hence was an unavoidable accident. Judgment went for the Government.

■ It is not our function, in affirming a non-jury judgment, to demonstrate that the Judge was right. The burden on the appellant is the formidable one of showing that the Judge was wrong, i. e., clearly erroneous. Our function is satisfied if our consideration reflects that the Judge's conclusions had a sufficiently rational basis in the evidence and did not flow from a significant mistake in the understanding of controlling law. Whether as a Court, or as three Judges sitting in District Courts, we would have arrived at this same result is quite beside the point. Trials are for trial courts. Barring legal error, there they should end.

We make these prefatory remarks lest the analysis of the evidence in the light of the inferences which the Judge may have drawn be misconstrued as a like holding by us. This is particularly important when the treatment takes the form of the now common effort, with all of the nice suppositions based on estimates of doubtful accuracy, to reconstruct the fast moving events of an automobile collision on the basis of relative movement of each vehicle in terms of time (seconds), distance (feet) and speed (mph).

So, without repeating for each sentence and phrase the caveat that we speak on facts only in terms of what the Judge was authorized to conclude, we turn to this event.

■ The collision occurred at the intersection of Biscayne Boulevard and Flagler Street in Miami, Florida, at 5:00 p. m. in broad daylight. The plaintiffs, two young ladies in Miss Beit's sedan, were southbound on Biscayne Boulevard. The Government vehicle, a mail truck, was eastbound on Flagler. Traffic at this intersection was controlled by a customary overhead traffic light with the usual Green, Yellow and Red lights.

Each driver claims that as his respective vehicle entered the intersection the light was Green. Thereby hangs this tale, and probably the Judge's conclusion of unavoidable accident as well. For this may well have been the case in fact. And if it was, it was but another one in which man's intricate efforts to protect himself against the vicissitudes of this complex machine life may, like radar in fog on the high seas, be the cause of damage, not the savior from harm.

Biscayne Boulevard (north-south) has four parallel southbound lanes. Flagler (east-west) is one way east and has four parallel lanes. The mail truck was in the leftmost (northern) lane 1, so that it would be crossing immediately in front of the lines of southbound vehicles stopped on Biscayne for a Red light. The Beit car was proceeding southbound in lane 3 of Biscayne. Biscayne lane 1, next to the curb, was 30 feet wide, while lanes 2, 3 and 4 were 10 feet in width. The collision occurred in the northeast quarter formed by Biscayne lane 4 and Flagler lanes 1 and 2. The impact was in the neighborhood of 55 feet from the west boundary of Biscayne Boulevard. The distance traveled by the mail truck from the position where it was parked at the left (north) curb of Flagler to collision point was between 75 and 85 feet.

The mail truck driver, immediately before starting up from the curb, looked and saw that the Flagler light was Green. He proceeded thereafter in low gear up to the impact at a speed no one fixed in excess of 5 mph. Whether, after commencing the movement of the truck, he thereafter looked up at the traffic light, the driver was unable to say. All he could do was testify as to his usual custom and practice.

Meanwhile, back on Biscayne Boulevard, a city bus, according to both its driver and the driver of the mail truck, was in the east portion of Biscayne lane 1 waiting for the Biscayne light to change from Red to Green. While the bus was thus stationary, the Beit car came by in lane 3, the bus driver heard the impact and, looking up instinctively, saw that the Biscayne light was then Green. According to Miss Beit, the bus

was not stopped. On the contrary, it was moving ahead through the intersection and in the lane to her right. According to her, when her car, traveling in the neighborhood of 15 to 20 mph, was about 75 feet north of the intersection, the Biscayne light turned Green. Consequently, she proceeded on without stopping. When her car was just inside the intersection she saw the mail truck coming from her right. Both swerved but the truck hit her right front side and fender. On the other hand, the mail truck driver stated that, with the city bus stopped in the east part of lane 1, the bus obscured his view of any southbound cars in lane 3. It was not until the truck headed into lane 2 that he could see the Beit car coming down and, despite their mutual efforts to stop and swerve, the collision resulted.

As the Judge, by his brief findings, absolved both the plaintiffs and the defendant of negligence, presumably he concluded that whether or not each had a Green light, neither had run a Red light. This he could do.

The time and distance separating each vehicle from impact at the moment each driver realized the other's presence was very, very short. Starting with the impact and working backwards, it is entirely possible that each had a Green light on entering the intersection. The Beit car at approximately 15 to 20 mph was making in the neighborhood of 25 to 30 feet a second. When, on the plaintiffs' story, the Beit car was approximately 75 feet from the intersection and the Biscayne light turned Green, it was then about 3 seconds away from collision. Since the mail truck, at 5 mph, was making about 8 feet a second, this means that at this same moment (3 seconds before collision), the mail truck was but 24 feet or so west of the impact point. This would put the mail truck at about the line dividing Biscayne lane 1 and lane 2. Likewise, with the phasing of the Flagler lights at 17 seconds Green followed by 3 seconds Yellow followed by Red, it can be demonstrated that the truck could not have run this distance (the 31½ feet width of Biscayne lane 1) during the 3-second Yellow light. To put it another way, for the truck at 5 mph to run 55 feet from the intersection line to collision would have required at least 7 seconds. The Flagler Green light must therefore have been showing at least for an instant prior to the time the truck entered the intersection. Extending it further to the distance (80 feet) run from the parked position at the curb to collision point it took close to 10 seconds and this, of course, corroborated the truck driver's insistence that the light was then Green the moment before he got underway.

Granted that neither had the right to barge on through a traffic light controlled intersection on an unremitting assertion of a Green light right-of-way oblivious to the demands of other prudent precautions, this analysis frees each of a statutory fault for running a Red light. Once that was out of the way, it was then a question for the Judge to determine whether under all of the circumstances then existing, with each of them either in or rightfully approaching the intersection, each was sufficiently alert and attentive. This was to be tested by the usual standard of due care applied universally and in Florida, whose law is here controlling, 28 U.S.C.A. § 1346(b). This was the classic inquiry for Court or jury in the typical automobile collision case. And in circumstances as equivocal as were these, we could no more convict the mail truck driver of general negligence as a matter of law for having continued on in the left lane at this very slow speed, than we could the young ladies for having continued on toward the intersection. To be sure, looked at through the remarkable rear view mirror of the resulting event, it may now appear likely that the accident might have been prevented had either or both looked more sharply or proceeded more cautiously since other cars, including the city bus, wholly or partially obstructed their mutual view. But that is not the test.

Unavoidable accident does not, as appellants seem to think, apply only

where the injury is brought about by the intervention of outside forces—whether of God, nature or third persons. "An accident which is caused by an absence of *exceptional* foresight, skill or care which the law does not expect of the ordinarily prudent man is also characterized as inevitable or unavoidable. No redress is afforded for an injury caused by such an accident and the loss must be borne by the one upon whom it falls * * * ." (Emphasis in original.) Parker v. Womack, 1951, 37 Cal.2d 116, 120, 230 P.2d 823, 825.

Affirmed.