805 F.2d 1036
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
John H. STEVENS, Plaintiff-Appellant,
v.
TENNESSEE VALLEY AUTHORITY, Defendant-Appellee.
 No. 85-6137.
 United States Court of Appeals, Sixth Circuit.
 Oct. 24, 1986.
 
 Before KEITH and KENNEDY, Circuit Judges, and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Plaintiff John H. Stevens appeals from an order of the district court finding that Stevens had waived his right to be restored to his former position at TVA. Stevens also challenges the formula used by the district court to calculate his backpay award.
 
 I.
 
 2
 This litigation began in 1980 when Stevens filed an action in federal district court seeking to be restored to his former position as steamfitter with the Tennessee Valley Authority (TVA) pursuant to 5 U.S.C. Sec. 3551.[1] Stevens asserted that he had left TVA to serve active duty with the Tennessee National Guard and, after he completed his active duty assignment, TVA wrongfully denied his request to be restored to his position. The district court initially dismissed plaintiff's claim as being time barred, see Stevens v. TVA, 517 F.Supp. 75 (E.D.Tenn.1981); this court reversed, holding that the statute of limitations for laches controlled, and remanded the case for trial on the merits. Stevens v. TVA, 712 F.2d 1047 (6th Cir.1983).
 
 
 3
 On October 12, 1983, the district court held that TVA had violated the Veterans Preference Act by failing to restore Stevens to his former position. The court ordered injunctive relief in the form of restoring Stevens to his former position as steamfitter, and granted Stevens an award of backpay to be calculated from August 20, 1979, the day Stevens was wrongfully denied restoration, to the date Stevens was actually restored.
 
 
 4
 TVA did not restore Stevens to his position until January 23, 1984. Once Stevens finally began working pursuant to the court's restoration order, however, he worked for only two weeks. Stevens testified that during those two weeks he was never offered any overtime work, was not given a safety award, and was generally not made to feel welcome. Additionally, he had been required to submit to a physical exam where a nurse misdiagnosed him as having a hernia which he believed was intended to jeopardize his job position. Stevens concluded that the above factors indicated his future with TVA was "shaky."
 
 
 5
 To complicate matters, Stevens had been elected for a three-year term as secretary-treasurer of the local union in July 1983, prior to the district court's award of injunctive and monetary relief. Although he left his union job to return to his TVA position in January 1984, Stevens never resigned from the union job. Later, when Stevens left his TVA job after only two weeks, he wrote a letter to TVA, dated February 2, 1984, requesting administrative leave principally because "[t]o resign the elected position would cause undue expense and hardship to the Local Union and irreparable damage to my reputation."
 
 
 6
 On February 27, 1984, plaintiff filed a Motion for Proceeding Supplementary To and In Aid of Judgment, noting that the parties could not come to an agreement as to how much overtime pay plaintiff was entitled to. Plaintiff argued that he should "be viewed as having worked overtime during each hour of overtime which may have been worked by any member of his craft during the period in which he was wrongfully discharged...." Defendant, on March 9, 1984, responded to plaintiff's motion with its own motion for partial relief from the October 12, 1983 order. Specifically, TVA argued that it should only be required to pay backpay until July 31, 1983, when Stevens took the union job, rather than January 23, 1984, the day Stevens had been restored to his former TVA position.
 
 
 7
 The district court agreed with TVA, ruling that Stevens' backpay award should be measured from the day Stevens was wrongfully denied restoration (August 20, 1979) to the day he accepted his job with the union (July 31, 1983). The court also awarded overtime backpay in the amount of 68 percent of the average overtime earned by his craft during the backpay period, following the formula suggested by TVA.
 
 
 8
 On April 27, 1984 Stevens filed notice of appeal. This court, by unpublished per curiam dated March 26, 1985, reversed the order of the district court and remanded the case for further proceedings. This court expressed a general concern over the lack of evidence from which the district court made its determinations, and disagreed with the district court's adoption of TVA's overtime calculation without providing support for its action. This court stated:
 
 
 9
 In the record we find no evidence to support a finding that Stevens would have worked anything less than "all [the] overtime available to him." TVA has presented no evidence that Stevens was ever unwilling to work overtime hours. Thus, the mere fact that in his prior tenure Stevens only worked 68 percent as much overtime as his craft's average proves little. It is conceivable that rather than demonstrating an unwillingness to work overtime, this 68 percent figure could demonstrate there was something unwholesome about the manner in which TVA doled-out overtime.
 
 
 10
 The instructions to the district court on remand were to "hold an evidentiary hearing focusing on the questions of how much overtime would have been available to Stevens during this back pay period and how much of this overtime would he have worked."
 
 
 11
 With respect to the July 1983 backpay cut-off date, this court noted that there was "contradictory evidence in the record which suggests that Stevens was willing to work for TVA until February 3, 1984." With respect to this issue, the district court was instructed "to hold an evidentiary hearing focusing upon the question of whether Stevens' election to a position with his local union constituted a clear and unequivocal waiver of his right to reinstatement."
 
 
 12
 Pursuant to this court's mandate, a hearing was conducted by the district court on September 12, 1985. Several individuals testified at this hearing. Regarding the issue of whether Stevens intended to waive his right to restoration, Stevens made the following statements on direct examination:
 
 
 13
 Q When you went back to work with TVA, pursuant to their order of reinstatement, what was your attitude regarding your prospects when you went back under the conditions that you were returning?
 
 
 14
 A Well, I went back on the job to see if I was still in good standing with TVA.
 
 
 15
 Q And had you been in good standing, what was your intention regarding your future employment with TVA?
 
 
 16
 A I intended to stay on with TVA as I had originally.
 
 
 17
 Q Did this present any hazards for you as far as the position of employment that you had accepted with the union?
 
 
 18
 A Yes, sir. If I stayed there, it was going to damage my reputation as an individual.
 
 
 19
 Q Had you considered the possible consequences of giving up the job with the union with the possible consequences of a future with TVA?
 
 
 20
 A Yes, sir. That's the reason I went back to work.
 
 
 21
 He also testified that after returning to TVA, he felt that he was still being discriminated against because he was not given any overtime, he was denied a safety award and a nurse erroneously diagnosed him as having a hernia. Plaintiff maintained that he had not decided whether to leave TVA until the eighth or ninth day of working there when he realized his "future at TVA was shaky at the very least." On cross-examination, however, Stevens admitted that at the time he accepted the union job, it was his intention to complete the three-year term, although he did not know at that time that he would be restored to his former position at TVA.
 
 
 22
 Regarding overtime pay, Stevens testified that he never took vacations or sick leave and never turned down the opportunity to work overtime. However, he admitted that he was unavailable to work one week every month and two weeks every summer, including three weekends, because of National Guard training.
 
 
 23
 The Administrative Officer for TVA's Office of Construction, Mr. Asa Kelley, also testified. Mr. Kelley was responsible for computing employees' backpay. In his computations, upon which the district court relied, he assumed that Stevens worked every straight time hour which was available.[2] Regarding overtime, he calculated all the overtime hours worked by all steamfitters during the backpay period and all the straight time hours worked by all steamfitters and determined a ratio, or average, of overtime to straight time hours. This average is what TVA originally proposed to use in calculating Stevens' backpay award. However, since the plaintiff maintained that he worked more than the average amount of overtime, Mr. Kelley examined the records in more depth and determined that prior to Stevens' departure, Stevens had not even worked the average number of overtime hours but had only worked "68 percent of the craft ratio during the time that he was employed ..." with TVA.[3] Kelley also calculated the overtime to straight time ratio for Stevens' work crew and determined that their ratios were less than the overtime to straight time ratios for the steamfitter craft as a whole. He found that Stevens was unable to work 31 percent of the overtime hours worked by his crew because of his National Guard training commitments.
 
 
 24
 W.C. English, the Principal Assistant General Construction Superintendent at Watts Bar Nuclear Plant, testified as to how overtime hours are assigned, and testified that he was not aware of any discrimination against members of the National Guard in assigning overtime. He also testified that of the steamfitter craft, sketchmen and x-ray welders tend to work more overtime than plumbers and pipefitters. Stevens primarily worked as a plumber and pipefitter.
 
 
 25
 Noting that the burden was on Stevens to prove he was ready, willing and able to work the hours to substantiate his backpay claim, and concluding that it was improper to presume Stevens would have worked more overtime hours than anyone else in the steamfitter group, the district court adopted TVA's proposed formula of calculating Stevens' overtime. The court also rejected plaintiff's claim that TVA discriminated against him for being in the National Guard in allocating overtime, since there was no evidence of discrimination outside of plaintiff's personal opinion.
 
 
 26
 With respect to this court's second remand instruction, the district court concluded that by accepting the job with the union, Stevens waived his right to restoration. The court reasoned that plaintiff "not only knew that [the union] position carried a three-year term, but that he also intended to fulfill that term." The court further reasoned that the fact that Stevens' letter of February 2, 1984 was written after he had been restored, and only two weeks after returning to work, indicated that "plaintiff had no intention or desire to return to full-time work at his former TVA job after July, 1983, unless it was to return after his job was completed with the union in July, 1986." Therefore, the court awarded backpay from August 20, 1979 to July 31, 1983, with overtime being calculated according to TVA's overtime to straight time ratio formula.
 
 
 27
 Notice of appeal was timely filed on December 11, 1985.
 
 II.
 A.
 
 28
 A veteran can waive the right to be reinstated or restored to a formerly held position, but the waiver must be " 'clearly and unequivocally indicated.' " O'Mara v. Petersen Sand & Gravel Co., 498 F.2d 896, 897 (7th Cir.1974) (quoting Loeb v. Kivo, 169 F.2d 346, 349 (2d Cir.), cert. denied, 335 U.S. 891 (1948)). If Stevens had "clearly and unequivocally" intended to waive his right to restoration with TVA when he accepted the union job in July 1983, then TVA would only be required to pay backpay to Stevens until the time he waived his right to restoration, thereby forfeiting his rights under 5 U.S.C. Sec. 3551.
 
 
 29
 This inquiry is clearly a matter of determining Stevens' intent in July 1983 when he accepted the position with the union. Questions of intent are questions of fact, see Heights Community Congress v. Hilltop Realty, Inc., 774 F.2d 135, 140 (6th Cir.1985), cert. denied, 106 S.Ct. 1206 (1986); Henry v. Lennox Industries, Inc., 768 F.2d 746, 750 (6th Cir.1985), and as such may be set aside only if the findings are clearly erroneous. Anderson v. City of Bessemer City, 105 S.Ct. 1504, 1511 (1985). Fed.R.Civ.P. 52(a). To be clearly erroneous, the reviewing court must be left with a "definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948). Although the reviewing court may have resolved the evidence differently, that is not enough to set aside a finding of fact or a credibility determination. Anderson, 105 S.Ct. at 1511. Rather, "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." Id. at 1512. See also Beit v. United States, 260 F.2d 386, 387 (5th Cir.1958) (there must be rational basis in the evidence for the lower court's finding). This court's function on review, therefore, is quite limited. Brown v. Wesley's Quaker Maid, Inc., 771 F.2d 952, 956 (6th Cir.1985).
 
 
 30
 Although there is evidence that Stevens intended and hoped to return to his prior TVA employment, which is evidenced by his testimony and the fact that he continued to pursue this lawsuit, there was also evidence from which the district court could permissibly conclude that Stevens fully intended to fulfill his union obligations by serving the full three-year term when he accepted the secretary-treasurer position.
 
 
 31
 The existence of another long term job or other commitment does not necessarily imply, in and of itself, an intent to waive one's right to restoration or backpay. Cf. Loeb v. Kivo, 169 F.2d 346, 350 (2d Cir.) (veteran may have left job with three year contract if offer for restoration had been made), cert. denied, 335 U.S. 891 (1948). However, in this case plaintiff returned to his job with TVA for merely a two-week period, and had not resigned from his union position. This is evidence from which one could reasonably conclude that Stevens never intended to return to his TVA job if returning presented a conflict with his union duties. Cf. Miller v. Marsh, 766 F.2d 490 (11th Cir.1985) (although claimant left law school to return to former employment, she only did so for one week before returning to classes; therefore, it was reasonable to conclude that by enrolling in school, claimant had removed herself from the job market). Stevens' letter of February 2, 1984 and his testimony at the hearing below lend support to this conclusion.
 
 
 32
 Therefore, the district court's conclusion that TVA is only required to pay backpay to Stevens through July 31, 1983, is affirmed.
 
 B.
 
 33
 The federal statutes granting preferences to veterans who have removed themselves from the workforce to serve their country are generally to be construed liberally. See Dyer v. Hinky Dinky, Inc., 710 F.2d 1348, 1350 (8th Cir.1983); Schaller v. Board of Education, 449 F.Supp. 30, 32 (N.D.Ohio 1978). At the same time, however, a veteran entitled to backpay is only entitled to what he would have earned had he been properly restored to his position. Cf. McKinney v. Missouri-Kansas-Texas R.R., 357 U.S. 265, 270 (1958). There is no obligation to pay a veteran for hours he could not have worked, nor to arrange for a veteran to make up overtime pay he has, or would have, missed. See Monroe v. Standard Oil Co., 452 U.S. 549, 561-63 (1981). Further, the burden is on the plaintiff/employee to establish the amount of backpay to which he is entitled.[4] Cf. Barrett v. Grand Trunk Western R.R., 581 F.2d 132 (7th Cir.1978), cert. denied, 440 U.S. 946 (1979). For a backpay award, it is a prerequisite to establish that one is "ready, willing, and able to work...." Kanarek v. United States, 394 F.2d 525, 534 (Ct.Cl.1968), cert. denied, 394 U.S. 1013 (1969); see also Miller v. Marsh, 766 F.2d 490, 492 (11th Cir.1985) (for Title VII backpay award, must establish that person is ready, willing and available for employment). Since it is within the district court's discretion to formulate an appropriate backpay award, an award can be overturned only upon a showing of an abuse of discretion. Cf. Miller v. Marsh, 766 F.2d at 492.
 
 
 34
 The district court, after conducting a hearing and carefully reviewing the evidence, found that there was a significant amount of overtime hours which Stevens would not have been available to work because of his National Guard responsibilities. The court was correct in deciding that Stevens was not entitled to receive overtime backpay for those hours. McKinney, 357 U.S. at 270. The court also found that Stevens' work history indicated that Stevens only worked 68 percent of the overtime to straight time ratio for the steamfitter craft as a whole. The court specifically concluded that the amount of overtime hours worked by Stevens in the past was not a result of discrimination on the part of TVA. Given the lack of evidence to support Stevens' assertion of discrimination in assigning overtime, the court's finding in this regard is not clearly erroneous. Rather, the court's conclusion is supported by Stevens' unavailability for overtime work, and the fact that, on the average, plumbers and pipefitters worked fewer overtime hours than other steamfitters.
 
 
 35
 Although the district court adopted the same formula for calculating overtime which was reviewed by this court on a prior occasion, all the concerns of this court were addressed by the district court on remand, and we can detect no abuse of discretion. Accordingly, the judgment of the district court is AFFIRMED.
 
 
 
 [1]
 Section 3551 provides that an individual employed by the United States who is ordered to active duty as a Reserve of the Army or as a member of the National Guard is entitled "to be restored to the position held by him when ordered to duty."
 
 
 [2]
 Therefore, he assumed Stevens did not take vacation or sick leave
 
 
 [3]
 The 68 percent figure was arrived at by examining Stevens' work record over a several year period, and therefore included his earlier years where he worked fewer overtime hours
 
 
 [4]
 As a third issue, Stevens argues that although the burden is generally on the returning employee to establish the amount of backpay to which he is entitled, such should not be the case here. Stevens asserts that it is difficult to calculate what he would have been entitled to because of TVA's failure to maintain adequate records. The district court stated that "plaintiff's claim on this issue is totally without merit. To the contrary, it is because of TVA's detailed records that this Court is able to reach a decision without unnecessary speculation as to the amount of backpay to which plaintiff is entitled." We accept the district court's finding in this regard as we do not find it to be clearly erroneous. Stevens also challenges the district court's award on the theory that the backpay calculation involved some speculation. However, since Stevens did not work during the years this litigation was ongoing, his backpay award necessarily involves speculation since there is no way precisely to determine how many hours he would have worked. Therefore, the fact that the calculation involves some speculation does not provide justification for setting aside the court's award