**JEFFERSON–PILOT FIRE & CASUALTY COMPANY, Plaintiff,**

v.

**SUNBELT BEER DISTRIBUTORS, INC., and Deana Pressley, Defendants.**

**Civ. A. No. 3:93–2241–17.**

United States District Court, D. South Carolina, Columbia Division.

Dec. 10, 1993.

Gary S. Parsons, David S. Coats, Bailey & Dixon, Raleigh, NC, William Reynolds Williams, Willcox, McLeod, Buyck, Baker & Williams, Florence, SC, for plaintiff.

James A. Merritt, Jr., Berry, Dunbar, Daniel, O'Conner & Jordan, Columbia, SC, for defendants.

## ORDER

JOSEPH F. ANDERSON, Jr., District Judge.

This matter is currently before the court on the plaintiff insurance company's motion for summary judgment. The court heard oral argument on this motion from counsel

on December 2, 1993.[1] For the reasons set forth in this order, the plaintiff's motion for summary judgment is hereby granted.

On February 2, 1993 defendant Deana Pressley (Pressley) brought an action in this court against her former employer, defendant Sunbelt Beer Distributors, Inc. (Sunbelt), for racial discrimination in violation of 42 U.S.C. § 1981. Pressley, who was an account representative for Sunbelt, alleges that she was fired for dancing with black males at social gathering after a marketing function. Pressley also included in her complaint against Sunbelt a cause of action for alleged violations of the Equal Pay Act, 29 U.S.C. § 206(d), for unequal pay based upon gender. Pressley's action is currently pending before the U.S. Magistrate Judge in this district.

Plaintiff in this action, Jefferson–Pilot Fire & Casualty Co. (Jefferson–Pilot), issued a general commercial liability policy, bearing policy number SC6400149, to Sunbelt on March 24, 1992. The policy provided Sunbelt general aggregate and personal and advertising injury liability coverage for up to a limit of $1,000,000. Pursuant to the policy, Sunbelt demanded that Jefferson–Pilot provide a defense and indemnify it against all claims set forth in the Pressley action. Jefferson–Pilot commenced to defend Sunbelt in the underlying action under a full reservation of rights. Thereafter, Jefferson–Pilot brought this action pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., seeking a declaration that the underlying Pressley action was not within the coverage of the policy and that Jefferson–Pilot therefore owed Sunbelt no duty either to defend or to indemnify Sunbelt in that action.

█ It is well settled under South Carolina law that "[a]n insurer's duty to defend is determined from the allegations of the complaint. If the facts alleged in a complaint *against an insured* fail to bring a claim within the policy coverage then an insurer

has no duty to defend." *Shelby Mutual Insurance Co. v. Askins,* 307 S.C. 81, 413 S.E.2d 855, 859 (Ct.App.1992) (citing *South Carolina Medical Malpractice Liability Insurance Joint Underwriting Ass'n v. Ferry,* 291 S.C. 460, 354 S.E.2d 378 (1987)). In other words, to determine coverage, a court in a declaratory judgment action should compare the complaint in the underlying action with the language of the policy to see whether the complaint alleges any facts that could possibly bring the action within the coverage of the policy. Of course, South Carolina law commands that insurance coverage is to be liberally construed against the insurer, and any ambiguities in the policy are to be interpreted in favor of the insured. *See, e.g., Spinx Oil Co. v. Federated Mutual Insurance Co.,* 427 S.E.2d 649, 651 (S.C.1993).

The commercial general liability (CGL) coverage portion of the Jefferson–Pilot policy is the only part of the policy that could possibly provide coverage in the underlying action.[2] The two relevant sections of the CGL coverage are Coverage A, which provides coverage for "Bodily Injury and Property Damage," and Coverage B, which provides coverage for "Personal and Advertising Injury" liability. These two sections will be analyzed seriatim.

Coverage A of the insurance policy provides, in relevant part:

We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages. We may at our discretion investigate any "occurrence" and settle any claim or "suit" that may result.

(Policy, CGL § I, Coverage A, ¶ 1.a.).

█ Plaintiff argues that Pressley's complaint, which, in part, seeks damages for

---

1. Before the hearing on this motion, defendant Deana Pressley advised the court that she believed she had no interest in this declaratory judgment action. Accordingly, only counsel for the plaintiff, Jefferson–Pilot, and for defendant Sunbelt Beer Distributors briefed and argued this motion.

2. The other portions of the policy provide coverage for business property, crime, and inland marine, and thus are obviously not at issue in this case.

"loss of earnings, loss of benefits, loss of earning capacity, [and] loss of reputation" (Pressley Complaint, ¶ 9), does not allege any property damage. The policy defines "property damage" as "[p]hysical injury to tangible property, including all resulting loss of use of that property." (Policy, CGL § V, ¶ 12.a.). The court agrees that Pressley does not allege in her action against Sunbelt any type of property damage; therefore, no coverage exists under this provision of the policy. *See Aetna Casualty & Surety Co. v. First Security Bank,* 662 F.Supp. 1126, 1129–30 (D.Mont.1987) (holding that lost wages, diminished earning capacity, and damage to reputation alleged in an action for wrongful termination do not constitute "property damage" within the meaning of a liability insurance policy); *see also Giddings v. Industrial Indemnity Co.,* 112 Cal.App.3d 213, 169 Cal. Rptr. 278, 281 (1980) ("[S]trictly economic losses like lost profits [or] loss of goodwill … do not constitute damage or injury to tangible property covered by a comprehensive general liability policy.").

Furthermore, plaintiff asserts that Pressley's action does not fall within the "bodily injury" liability provision of Coverage A. Plaintiff proposes three independent arguments to support its position that coverage does not exist: (1) Pressley has sustained no bodily injuries as a result of Sunbelt's alleged wrongdoing; (2) the "course of employment" exclusion bars coverage; and (3) the "expected or intended" exclusion applies, or there is no "occurrence" since Pressley has not alleged an "accident."

■ First, plaintiff alleges that Pressley's alleged damages do not constitute "bodily injury" as contemplated by the policy. The policy defines "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from these at any time." (Policy, CGL § V, ¶ 3). In her complaint, however, Pressley merely alleges, as part of her damages, "loss of reputation, mental anguish, humiliation, and loss of enjoyment of life." (Pressley Complaint, ¶ 9).

South Carolina law generally recognizes that emotional trauma may constitute bodily injury for purposes of determining insurance coverage. *See Allstate Insurance Co. v. Biggerstaff,* 703 F.Supp. 23, 25 (D.S.C.1989); *State Farm Mutual Automobile Insurance Co. v. Ramsey,* 295 S.C. 349, 368 S.E.2d 477, 478 (Ct.App.), *aff'd per curiam,* 297 S.C. 71, 374 S.E.2d 896 (1988); *Spaugh v. Atlantic Coast Line R. Co.,* 158 S.C. 25, 155 S.E. 145, 147 (1930). However, the cases that have established this principle under South Carolina law have involved some type of physical manifestation of emotional injury.[3] Although Ms. Pressley alleges some forms of mental suffering as part of her damages, her complaint contains no allegations of physical damages.[4] In construing this policy, this court is not prepared to extend the interpretation of "bodily injury" to include purely emotional damage absent some objective indication of physical symptoms. Accordingly, Pressley's action against Sunbelt does not fall within Coverage A of the policy.

■ Even if this court were to conclude that Pressley's action asserted "bodily injury" under the policy, Jefferson–Pilot argues

---

**3.** For example, both *Biggerstaff* and *Ramsey* involved underlying actions for negligent infliction of emotional distress. One essential element of this cause of action for emotional distress is that "the emotional distress must both manifest itself by physical symptoms capable of objective diagnosis and be established by expert testimony." *Kinard v. Augusta Sash & Door Co.,* 286 S.C. 579, 336 S.E.2d 465, 467 (1985).

Similarly, in *Spaugh,* the case on which *Ramsey* and *Biggerstaff* rely, the plaintiff sustained physical injury as a result of her mental suffering. Indeed, the appellant in *Spaugh* argued "that the plaintiff could not recover for mental suffering for the reason that there was no proof of bodily injury." The court rejected this argument because it concluded that "there is ample

proof that the plaintiff suffered bodily injury." *Spaugh,* 155 S.E. at 147. Thus, the court apparently agreed with the appellant's basic premise that a plaintiff cannot recover for mental suffering absent some physical manifestation of the injury, but merely disagreed with the appellant about the sufficiency of the evidence of physical injury.

**4.** Defendant Sunbelt urges that, because the Federal Rules of Civil Procedure require mere notice pleading, the court should suppose that Pressley's allegations of mental anguish and loss of enjoyment of life include physical manifestations. The court is not, however, prepared to make this assumption.

that its policy does not provide Sunbelt coverage for the underlying action. The policy contains a course of employment exclusion, which provides: "This insurance does not apply to ... '[b]odily injury' to ... [a]n employee of the insured arising out of and in the course of employment by the insured.... This exclusion applies ... [w]hether the insured may be liable as an employer or in any other capacity." (Policy, CGL § I, Coverage A, ¶ 2.e.(1)). Although South Carolina courts have not specifically interpreted the course of employment exclusion in this context, other jurisdictions have used this exclusion to reject coverage in cases similar to the underlying Pressley action. *See, e.g., Watson v. Town of Arcadia,* 542 So.2d 1168, 1170–71 (La.Ct.App.) (holding that plaintiff's claim for "damages for humiliation, mental anguish, and embarrassment" resulting from alleged wrongful discharge was excluded from coverage by course of employment exclusion), *writ denied,* 548 So.2d 1234 (La.1989); *Aberdeen Insurance Co. v. Bovee,* 777 S.W.2d 442, 444 (Tex.Ct.App.1989) (holding that course of employment exclusion barred coverage for claim by former employee of insured for sexual harassment, because her claim "was from and due to her employment"). Because Pressley's action arose out of her employment with Sunbelt,[5] the court agrees that her action is excluded from coverage under the Jefferson–Pilot CGL policy.

■ Moreover, again assuming *arguendo* that Pressley's action asserts "bodily injury" within the meaning of the CGL policy, Jefferson–Pilot asserts that the underlying action is nevertheless excluded because the complaint alleges only intentional acts. The policy contains an intentional act exclusion, which provides: "This insurance does not apply to .... '[b]odily injury' or 'property damage' expected or intended from the standpoint of the insured." (Policy, CGL § I, Coverage A, ¶ 2.a.) The policy further provides that coverage under the CGL provisions exists only if "[t]he 'bodily injury' or

'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory.'" (Policy, CGL § I, Coverage A, ¶ 1.b.(1)). The policy defines an "occurrence" as "any accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Policy, CGL § V, ¶ 9). The court agrees that these provisions exclude the underlying Pressley action from coverage under the policy.

South Carolina courts have interpreted similar provisions in insurance policies to exclude coverage for intentional acts. For example, in *Snakenberg v. Hartford Casualty Insurance Co.,* 299 S.C. 164, 383 S.E.2d 2 (Ct.App.1989), the court of appeals determined that an action against the insured for intentional infliction of emotional distress was excluded by the intentional act exclusion in the tortfeasor's homeowners insurance policy. The court stated, "if the complaint against the insured alleges intentional wrongdoing, the insurer has no duty to defend." *Id.* 383 S.E.2d at 4.

Similarly, in the recent case of *USAA Property & Casualty Insurance Co. v. Rowland,* 435 S.E.2d 879 (S.C.Ct.App.1993), the court of appeals concluded that an action against the insured for alienation of affections was not within the coverage of the insured's homeowners policy. The *Rowland* court based its decision both on the policy's definition of "occurrence," which required an "accident" for coverage to exist, and on the policy's intentional act exclusion. *Id.* at 881–82. In determining that no coverage existed, the court focused on the fact that alienation of affections is an intentional tort.

The allegations in Pressley's complaint involve only intentional acts. In fact, the United States Supreme Court has held that 42 U.S.C. § 1981 "can be violated only by purposeful discrimination." *General Building Contractors Ass'n v. Pennsylvania,* 458 U.S. 375, 391, 102 S.Ct. 3141, 3150, 73 L.Ed.2d 835 (1982). Because Pressley alleges only inten-

---

**5.** Sunbelt argues that the course of employment exclusion does not preclude coverage for the Pressley action because the incident in which Pressley was "yanked off the dance floor" occurred outside the scope of her employment. This argument mischaracterizes the nature of

Pressley's action. Pressley's suit arose out of her termination from Sunbelt, not from her being improperly removed from the dance floor. Termination of employment is certainly an act that occurs in the course of one's employment.

tional acts by Sunbelt, her action does not fall within the "bodily injury" coverage of the policy. Also, public policy supports this interpretation of the insurance contract. The discrimination that Ms. Pressley complains of is not the type of action that an employer should be able to insure against.

The only other possible coverage in this case is in Coverage B, which affords coverage for personal injury and advertising liability. That portion of the policy provides, in relevant part:

We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this coverage part applies. We will have the right and duty to defend any "suit" seeking those damages. We may at our discretion investigate any "occurrence" or offense and settle any claim or "suit" that may result.

(Policy, CGL § I, Coverage B, ¶ 1.a.). Plaintiff argues that Pressley's action falls within neither the personal injury coverage nor the advertising injury coverage.

█ The policy specifically defines "personal injury" as injury arising out of one or more of five enumerated offenses. (Policy, CGL § V, ¶ 10.a.-e.). This court's construction of the personal injury coverage is bound by the policy's definition of claims that fit within that category of coverage. For example, in *Martin v. Brunzelle*, 699 F.Supp. 167 (N.D.Ill.1988), the court determined that a personal injury provision in a landlord's comprehensive business insurance policy did not provide coverage for an action for racial discrimination in violation of 42 U.S.C. § 1982. The *Martin* court stated that the insured's argument for coverage would be persuasive

if the Policy were written to provide general coverage, excluding only specified risks. But here the Policy builds from the ground up: It affords coverage only for defined risks. Among those covered risks, "personal injury" is in turn specifically defined to include only three types of conduct....

There is no call for [the insurer] to list exclusions from a category of coverage that would not embrace the excluded item in the first place. What is plainly not

*included* within the coverage is by definition *excluded.*

*Id.* at 170–71.

This court agrees that Pressley's action alleges no injury that would fit into any of these specifically listed categories of covered offenses. Defendant Sunbelt argues that Pressley's complaint could be interpreted to fall within the last category in personal injury, which provides coverage for "[o]ral or written publication of material that violates a person's right of privacy." (Policy, CGL § V, ¶ 10.e.). Sunbelt contends that this provision is applicable because its employee's actions in yanking Ms. Pressley off the dance floor could be construed as a violation of her privacy. Although Ms. Pressley alleges loss of reputation as part of her damages, her complaint contains no cause of action for invasion of privacy or defamation. Accordingly, the court concludes that the underlying Pressley action is not within the "personal injury" coverage of the policy.

█ Finally, the court agrees that Pressley's action does not fall within the advertising injury liability coverage afforded by Coverage B. This section of the policy provides: "This insurance applies to ... '[a]dvertising injury' caused by an offense committed in the course of advertising [the insured's] goods, products or services." (Policy, CGL § I, Coverage B, ¶ 1.b.(2)). In addition, the policy defines "advertising injury" to include only four types of actions: defamation, invasion of privacy, misappropriation of ideas, and copyright infringement. (Policy, CGL § V, ¶ 1.). Ms. Pressley's complaint certainly did not arise in the course of Sunbelt's advertising efforts, and, as discussed above, her complaint falls within none of the enumerated classes of "advertising injury." Accordingly, no coverage exists under the "advertising injury" provisions of Coverage B for Pressley's action against Sunbelt.

For the foregoing reasons, the court concludes that Deana Pressley's action against Sunbelt for racial discrimination in terminating her employment and for gender discrimination in her compensation does not fall within the general commercial liability insurance that Jefferson–Pilot issued to Sunbelt. Accordingly, Jefferson–Pilot has no duty either

to defend or indemnify Sunbelt in the underlying lawsuit. Therefore, plaintiff's motion for summary judgment on its declaratory judgment action is hereby granted.

IT IS SO ORDERED.