**VIENNA FAMILY MEDICAL ASSOCIATES, INC.,
Plaintiff,**

v.

**ALLSTATE INSURANCE CO., Defendant.**

**Civ. A. No. 6:94–0417.**

United States District Court,
S.D. West Virginia,
Parkersburg Division.

Jan. 12, 1995.

---

James H. McCauley, Belpre, OH, for plaintiff.

Robert G. Steele and Gordon H. Copland, Steptoe & Johnson, Clarksburg, for defendant.

## *MEMORANDUM OPINION AND ORDER*

HADEN, Chief Judge.

Pending is the Defendant's Motion to Dismiss pursuant to *Rule* 12(b)(6) of the *Federal Rules of Civil Procedure*. Because matters outside the pleadings have been presented, the Court treats the motion as one for summary judgment and disposes of it as provided in *Rule* 56. The parties have submitted memoranda in support of their respective positions and the matter is mature for the Court's consideration. Based upon the absence of any genuine issue of material fact, the Court **GRANTS** the motion for summary judgment and declares the rights of the parties under a contract of insurance.

Under *Rule* 56(c) of the *Federal Rules of Civil Procedure,* summary judgment is proper only:

> "[i]f the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law."

Fed.R.Civ.P. 56(c). The moving party has the burden of initially showing the absence of a genuine issue concerning any material fact. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Once the moving party has met its initial burden, the burden shifts to the nonmoving party to "establish the existence of an element essential

to that party's case and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). To discharge this burden, the nonmoving party cannot rely on its pleadings but instead must have evidence showing that there is a genuine issue for trial. *Id.* at 324, 106 S.Ct. at 2553. "The opposing party must demonstrate that a triable issue of fact exists; he may not rest upon mere allegations or denials.... A mere scintilla of evidence supporting the case is insufficient." *Shaw v. Stroud,* 13 F.3d 791, 798 (4th Cir.1994) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)), *cert. denied,* —— U.S. ——, 115 S.Ct. 67, 130 L.Ed.2d 24, *and cert. denied,* —— U.S. ——, 115 S.Ct. 68, 130 L.Ed.2d 24 (1994). As stated by our Court of Appeals:

"[a] genuine issue [of material fact] exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 [106 S.Ct. 2505, 2510, 91 L.Ed.2d 202] (1986). In considering a motion for summary judgment, the court is required to view the facts and draw reasonable inferences in a light most favorable to the nonmoving party. *Id.* at 255 [106 S.Ct. at 2513–14]. The plaintiff is entitled to have the credibility of all his evidence presumed. *Miller v. Leathers,* 913 F.2d 1085, 1087 (4th Cir.1990), *cert. denied,* 498 U.S. 1109 [111 S.Ct. 1018, 112 L.Ed.2d 1100] (1991).

*Shaw,* 13 F.3d at 798; *accord Cornell v. General Elec. Plastics,* 853 F.Supp. 221, 225–26 (S.D.W.Va.1994) (Haden, C.J.); *Thomas v. Shoney's Inc.,* 845 F.Supp. 388, 389–90 (S.D.W.Va.1994) (Haden, C.J.).

■ In interpreting an insurance policy, any ambiguity in the language of the policy must be liberally construed in favor of the insured. *Marson Coal Co. v. Insurance Co. of State of Pa.,* 158 W.Va. 146, 150, 210 S.E.2d 747 (1974). "An insurer's duty to defend an action in accordance with the terms of its policy is to be gathered from the face of the complaint." *Baker v. American Ins. Co. of Newark, N.J.,* 324 F.2d 748, 750 (4th Cir.1963) (citing *Glens Falls Indem. Co. v. Atlantic Bldg. Corp.,* 199 F.2d 60, 61 (4th Cir.1952)).

■ This duty to defend is tested by whether the allegations in the plaintiff's complaint are "reasonably susceptible of an interpretation that the claim may be covered by the terms of the insurance policy." *Aetna Cas. & Sur. Co. v. Pitrolo,* 176 W.Va. 190, 342 S.E.2d 156, 160 (1986) (citations omitted). To meet this test, it is not required that the facts alleged in the complaint against the insured "specifically and unequivocally" delineate a claim falling within the insurance coverage. *Id.* (citations omitted).

■ A liability insurer need not defend a case, however, if the alleged conduct is entirely foreign to the risk insured against. *Donnelly v. Transportation Ins. Co.,* 589 F.2d 761, 765 (4th Cir.1978) (diversity case construing District of Columbia law), *cited with approval in Horace Mann Ins. Co. v. Leeber,* 180 W.Va. 375, 378, 376 S.E.2d 581, 584 (1988). Nevertheless, "an insured's right to a defense will not be foreclosed unless such a result is inescapably necessary." *Horace Mann,* 180 W.Va. at 378, 376 S.E.2d at 584.

The undisputed facts of this case are as follows. Vienna was insured under a policy of insurance issued by Allstate. The policy in issue, No. 049 479628, was effective from December 30, 1991 through December 29, 1992. The policy contains the following Business Liability–Comprehensive Liability provision:

"We will pay on behalf of persons insured all sums which they become legally obligated to pay as damages arising out of an accidental event, personal injury or advertising injury that occurs while this policy is in effect."

Allstate Insurance Policy at 19.[1]

The policy also contains a provision which states:

"an accident, including continuous or repeated exposure to the same conditions, resulting in bodily injury or property damage. *An accident*

---

1. The policy defines the phrase "accidental event" as:

"We do not cover.... [a]ny liability for:

a. Bodily injury to any of your employees that result from the activities of another employee(s) who is acting within the course and scope of their employment.

b. Bodily injury to you, your partners or joint venturers that result from the activities of your employee(s) who are acting within the course and scope of their employment.

*(a) and (b) above do not apply to executive officers, directors or stockholders.*

Allstate Insurance Policy at 24–25, paragraph 14 (emphasis added).

Vienna employed Joyce Ruble from November 1985 through November 1992. Late in 1993, Ruble filed suit against Vienna, David W. Avery, M.D. F.A.A.F.P. (hereinafter "Avery") and Richard A. Yocum, M.D. A.A.F.P. (hereinafter "Yocum") in the Circuit Court of Wood County. *Ruble v. Vienna Family Medical Assoc., Inc.,* No. 93–C–1338 (Wood County, W.Va., filed Dec. 6, 1993).

The seven count state complaint alleged Vienna, Avery, and Yocum created a hostile work environment and constructively discharged Ruble from her employment with the intent to retaliate for her exercise of rights under the West Virginia Workers Compensation Act and for her exercise of rights under the West Virginia Safe Work Place Act. The complaint further alleged breach of contract between Ruble and Vienna, violation of the West Virginia Human Rights Act, violation of the West Virginia Wage and Hour Law, and tortious interference with the contractual relationship between Ruble and Vienna's long-term disability carrier. The Plaintiff alleged Defendant's acts were reckless, negligent, willful, and intentional. Ruble claimed damages for severe emotional distress, lost wages, penalties under the Wage and Hour Law, and punitive damages.

Vienna initiated this action in the Circuit Court of Wood County, West Virginia on April 26, 1994. Vienna seeks a declaration that Allstate must provide a defense and indemnification under the policy of insurance issued by Allstate for the claims against Vienna in Ruble's lawsuit. Vienna further claims Allstate breached its contract of insurance and acted in bad faith in denying insurance coverage for Ruble's employment discrimination claims.

Allstate timely removed the action to this Court pursuant to 28 U.S.C. §§ 1441(a) and 1446(a), based on this Court's diversity jurisdiction. On December 19, 1994, Plaintiff filed a Supplemental Memorandum in Opposition to Defendant's Motion to Dismiss. In that memorandum, it revealed the state civil action between Ruble and Vienna has been settled. Plaintiff now asks the Court to determine whether Allstate should have defended the Ruble action and should now be responsible for covering the monetary settlement paid to Ruble and for costs of litigation

---

*cannot be intended or expected by any persons insured,* except for the use of reasonable force to protect persons or property."
*Id.* at 36 (emphasis added). The policy defines the phrase "personal injury" as:
"'Personal injury' means the following offenses committed in the course of your business:
1. The false arrest, detention or imprisonment of anyone.
2. Malicious prosecution.
3. Libel, slander or the publication of any material damaging to anyone's reputation.
4. Any writing or statement that violates anyone's right of privacy.
5. Any wrongful entry on anyone's premises, wrongful eviction from those premises or other action that violates anyone's private occupancy.
Personal injury does not include offenses committed in the course of your advertising, broadcasting, publishing or telecasting activities."

*Id.* at 37. The policy defines "advertising injury" as:
"injury which arises out of an offense committed in the conduct of your advertising activities if such injury arises out of libel, slander, defamation, violation of the right of privacy, piracy, unfair competition or infringement of copyright, title or slogan."
*Id.* at 36. The policy defines the phrase "bodily injury" as:
"injury, sickness or disease and includes death that results from injury, sickness or disease."
*Id.* The policy defines the phrase "property damage" as:
"physical damage to, or the destruction of, any tangible property, including any losses that result because the damaged or destroyed property can no longer be used."
*Id.* at 38.

and attorney's fees Plaintiff expended to defend the state action.

The Business Liability exclusion found in paragraph fourteen operates to exclude coverage for bodily injuries to an employee that result from the activities of another employee. *See* Allstate Insurance Policy at 24–25, paragraph 14 and *supra* p. 6. However, the *caveat* concluding the paragraph provides this exclusion does not apply to executive officers, directors or stockholders. *Id.* Thus, the allegedly negligent acts of Avery and Yocum would be covered under the terms of the policy.

The Plaintiff has three avenues of coverage because the policy "will pay on behalf [of the insured] damages arising out of an accidental event, personal injury or advertising injury." Allstate Insurance Policy at 19. A cursory examination of the policy definitions of "personal injury" and "advertising injury" reveals the acts complained of in this action do not qualify.

The remaining coverage for the Plaintiff arises if their or its alleged acts injuring Ruble qualified as "accidental event[s]." In an earlier unpublished decision, this Court denied Vienna coverage for an incident in which one of its physicians allegedly assaulted a receptionist and then terminated her employment when she was unable to work full time as a result of her injuries. *Mosburg v. Allstate Ins. Co.,* No. A:86–0036 (Mar. 24, 1987). In concluding Allstate did not have a duty to defend the action, the Court relied upon an exclusion contained in the policy.[2] The identical exclusion on the same insurance policy is present and thus a factor in this action.

■ The unpublished and unappealed *Mosburg* decision is not the law of this judi-cial district and it does not bind the Court in this action because it is factually distinguishable. *Mosburg* involved only intentional acts on the part of the insured. Intentional acts are not covered under the policy.[3] In contrast, Ms. Ruble alleged Plaintiff injured her by intentional and negligent acts. Negligent conduct is covered under the terms of the policy.

■ To enjoy the benefits of coverage, the Plaintiff must prove the acts "result[ed] in bodily injury or property damage." Consistent with its holding in *Mosburg,* the Court concludes there is coverage and a duty to defend claims arising from alleged negligently inflicted bodily injuries to Plaintiff's employees.

A remaining issue is whether Ms. Ruble's "lost wages" are covered "property damage" under the policy. Plaintiff failed to cite authority to support its argument that lost wages are covered property damage within the meaning of the policy.

■ Lost wages do not constitute property damage because property damage "requires physical injury to tangible property."[4] *Aetna Cas. & Sur. Co. v. First Security Bank of Bozeman,* 662 F.Supp. 1126, 1129 (D.Mont. 1987); *see also Sting Security, Inc. v. First Mercury Syndicate, Inc.,* 791 F.Supp. 555, 557 (D.Md.1992) (under Virginia law and interpreting an identical "property damage" definition as that found in *Aetna, supra,* the court held lost profits did not qualify as "property damage"); *Lapeka, Inc. v. Security Nat'l Ins. Co.,* 814 F.Supp. 1540, 1548–49 (D.Kan.1993) (holding past and future salary, loss of health and other employment benefits are not property damage); *Jefferson–Pilot, Fire & Cas. Co. v. Sunbel Beer Distributors, Inc.,* 839 F.Supp. 376 (D.S.C.1993).

---

**2.** The exclusion states, "We do not cover ... [a]ny bodily injury to anyone employed by any persons insured unless such bodily injuries are assumed under a contract or agreement that is not excluded." (Allstate Policy at 23, paragraph 8).

**3.** *See* footnote 1, *supra,* and the italicized language set forth.

**4.** The policy in *Aetna, supra,* defined "property damage" as:

"(1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy."

662 F.Supp. at 1129.

In *Jefferson–Pilot*, the policy defined "property damage" as "[p]hysical injury to tangible property, including all resulting loss of use of that property." 839 F.Supp. at 379. The Court concluded plaintiff's loss of earnings, loss of benefits, loss of earning capacity, and loss of reputation did not constitute property damage under this provision of the policy. *Id.* (citing *Aetna Cas. & Sur. Co. v. First Security Bank of Bozeman,* 662 F.Supp. 1126, 1129–30 (D.Mont.1987) and *Giddings v. Industrial Indem. Co.,* 112 Cal. App.3d 213, 169 Cal.Rptr. 278, 281 (1980) ("[S]trictly economic losses like lost profits [or] loss of goodwill ... do not constitute damage or injury to tangible property covered by a comprehensive general liability policy.")).

In this action, the terms of the policy are not ambiguous. Under plain policy definitions, the Plaintiff's alleged acts resulted in covered bodily injury; thus, the acts fall within the limits of coverage. The Court concludes under the terms of the policy Defendant Allstate has a duty to defend and provide coverage under the contract of insurance. The Court further concludes Defendant Allstate did not act in bad faith in denying coverage. The remaining issues are moot.

Accordingly, the Defendant's motion is **GRANTED.** The Court declares the Defendant has a duty to defend and provide coverage under the contract of insurance. The Court further **ORDERS** this action be dismissed and stricken from the docket of the Court.

The Clerk is directed to send a copy of this Order to counsel of record.