## 17511

Fred G. DUCKER, trading and doing business as Ducker Refrigeration Company, Appellant, v. CENTRAL SURETY & INSURANCE CORPORATION, Respondent
(107 S. E. (2d) 342)

*Philip H. Arrowsmith, Esq.,* of Florence, *for Appellant,*

*Messrs. Willcox, Hardee, Houck & Palmer* and *W. Laurier O'Farrell,* of Florence, *for Respondent,*

March 2, 1959.

STUKES, Chief Justice.

The plaintiff in this action is engaged in the sale and installation of home furnaces. He sold to one Bargesser and installed in his new home an oil furnace which damaged the home. Bargesser sued him for damages and recovered judgment in the amount of $1,250.00.

The defendant in the present action had issued to the instant plaintiff its policy of insurance whereby it agreed to pay on behalf of the insured all sums which the insured should become legally obligated to pay as damages because of injury to or destruction of property caused by accident and arising out of goods or products manufactured, sold, handled or distributed to others by the insured or others

trading under his name and if such accident occurred away from the premises, owned, rented or controlled by the insured.

The defendant here refused to pay the loss, denying that it resulted from accident, and this action was brought upon the policy. At the conclusion of plaintiff's evidence the trial court granted defendant's motion for nonsuit upon the conclusion that an accident, within the terms of the policy, was not established. This appeal therefrom requires some review of the testimony.

It was to the effect that after installation the furnace repeatedly accumulated soot and gas which resulted in explosions, and smoked the walls, etc., of the house. On one occasion upon such an explosion the smokestack was dislodged from the furnace. Plaintiff had been engaged in the heating business for eighteen years and had been selling and installing this particular make of furnace for fourteen years and had never previously had such an experience as this, which therefore was unusual, unexpected and unforeseeable.

In view of this evidence we think that it was error not to submit to the jury the issue of whether or not there was an accident within the coverage of the insurance policy. Indeed, it tended to show several incidents which may reasonably be found to have been accidents within the terms of the policy.

Long a leading case upon the subject is *Goethe v. New York Life Ins. Co.,* 183 S. C. 199, 190 S. E. 451, 458. Although concerned with a life insurance policy and whether death from heatstroke was accidental (which was the conclusion) the reasoning and precedents contained in the opinion are pertinent here. Quoted with approval are the following: "* * * If, in the act which precedes the injury, something unforeseen, unexpected, unusual, occurs which produces the injury, then the injury has resulted through accidental means;" and: "An effect which does not ordinarily follow and cannot be reasonably anticipated from the use of those means, an effect which the actor did not intend to pro-

duce and cannot be charged with the design of producing, * * * is produced by accidental means."

A similar later case, involving workmen's compensation, is *Strawhorn v. J. A. Chapman Const. Co.*, 202 S. C. 43, 24 S. E. (2d) 116, 118, in which the factual finding that the death of a painter from lead poisoning over a protracted period was accidental under the facts there was affirmed. We quote from it: "In addition to the foregoing evidence that the deceased as a part of his work scraped and brushed off old paint, subjecting him to the inhalation of the resulting dust containing lead, there was evidence that despite many prior years' painting experience the deceased had not been sick from lead poisoning, and the medical testimony that his case was extremely rare and that of other experienced painters who had known and observed many others, that they had never before known of such a case, all of which support the conclusion that the infection of the deceased was sudden and not to have been expected, and hence accidental under the terms of the law." Other like cases of similar result are noted in the annotation in 49 A. L. R. (2d) 1263, entitled, "Repeated absorption of poisonous substance as 'accident' within coverage clause of comprehensive general liability policy."

Heart disease which resulted from continued bruises to the chest was held to be an accidental injury in *Benjamin F. Shaw Co. v. Musgrave*, 1949, 189 Tenn. 1, 222 S. W. (2d) 22, 24, where it was said: "It is not necessary that the happening of the accident be a single occurrence identified in space of time."

Parallel to the above authorities are cases which hold that where an insured is intentionally injured by another, not the result of misconduct or assault by the insured but is unforeseen so far as he is concerned, the injury is accidental within the meaning of accident policies. *Jennings v. Clover Leaf Life & Casualty Co.*, 146 S. C. 41, 143 S. E. 668. *Page v. North Carolina Mut. Life Ins. Co.*, 207 S. C. 277, 35 S. E. (2d) 716.

Many decisions of like tenor and result to the foregoing are digested in 1 Words and Phrases, Accident, p. 250 *et seq.*

The gravamen of respondent's argument is that the evidence did not establish an accident or accidents within the following definition, particularly the last clause of it, from 45 C. J. S. Insurance § 827, p. 880: "An accidental injury within a policy indemnifying against liability resulting from accidental injuries is one which occurs unexpectedly, without design or intent, not in the course of natural events, and is capable of being traced to a definite time, place, and cause." However, we think that the facts in evidence may reasonably be found by the jury to come within the quoted definition. The issue was for them.

It appears that the policy here sued upon is a products liability policy, intended by the parties to protect the insured from liability for damages resulting from accidents in his business which come within its terms. Cases relating to such are reviewed in an annotation in 45 A. L. R. (2d) 994. From the introduction of it we quote the following, at page 995:

"The cases involving products liability insurance policies deal with the construction of the various terms used therein, and no general rule can be deduced from them except the rather obvious statement that the general principle of construction of insurance contracts that the policies involved, having been prepared by the insurer, must be construed most strongly against it and in favor of the insured, fully applies in the case of products liability insurance."

The case is remanded for new trial.

Reversed.

TAYLOR, OXNER, LEGGE and MOSS, JJ., concur.