David BAKER and Lee J. Baker,
Appellees,

v.

The AMERICAN INSURANCE COMPA-
NY OF NEWARK, NEW JERSEY,
Appellant.

No. 9001.

United States Court of Appeals
Fourth Circuit.

Argued Sept. 24, 1963.

Decided Nov. 18, 1963.

W. Ray Berry and Douglas L. Hinds, Columbia, S. C. (J. Monroe Fulmer and Fulmer, Barnes & Berry, Columbia, S. C., on the brief), for appellant.

Donald V. Richardson, III, Columbia, S. C. (Thomas E. McCutchen and Whaley & McCutchen, Columbia, S. C., on the brief), for appellees.

Before BRYAN and J. SPENCER BELL, Circuit Judges, and NORTHROP, District Judge.

ALBERT V. BRYAN, Circuit Judge:

In the accident policy issued by American Insurance Company to David and Lee J. Baker the insurer covenanted: (1) "to pay * * * all sums which the insured should become legally obligated to pay as damages because of injury to * * * property * * * *caused by accident"*; and (2) to defend "any suit against the insured *alleging such injury* * * * and seeking damages on account thereof * * * *"* (Accent added.)

The policyholders (Baker) were sued in a South Carolina court for damages under circumstances they thought entitled them to the insurance protection, but American refused to defend the suits. After American also declined to indemnify Baker for the amounts expended in settlement of the suits, Baker brought the instant action in the District Court to recover from American their expenses in defense of the cases as well as the settlement payments. The reasonableness of these sums was not disputed. The question on trial—whether the circumstances on which the claims were based constituted an "accident"—was found against American and it now appeals. We affirm.

Baker commenced the construction of a shopping center in April 1959 upon a 17-acre tract in Columbia, South Carolina. The terrain necessitated considerable grading besides the removal of trees and vegetation. Natural drainage was to the south and east, and ultimately into a public street extending east and west and forming the southern boundary of the property. Plans for the grading and final drainage of the proposed improvement were prepared by competent engineers. Included was the erection of a retaining wall along the eastern boundary, projecting well above the surface of the land and reaching to the street. The City issued a building permit for the project after approval of the plans. In the process of grading, the top soil and other surface materials were loosened and the denuded ground no longer retarded the run-off of rainfall.

By the last of June or early July, with the clearance and grading just about completed, this part of South Carolina suffered unusually heavy rains, commencing a period of abnormal rainfall continuing through October, 1959. The precipitation in July was more than 13 inches, the severest in Columbia since 1887. Hurricane Cindy alone brought 5.79 inches in the single day of July 9. In August, however, it was not quite 5 inches, slightly subnormal for the month. In September more than 7 inches fell, which was nearly 3 inches above the seasonal average. The same month Hurricane Gracie produced 4.89 inches in 24 hours. October's fall was more than 12 inches, some 9 inches beyond ordinary. The Weather Bureau reported that the rainfall for the four months was without precedent since the beginning of its records in 1887.

So great was the volume of rain water that chunks of asphalt street pavement were forced out of place and blocked the storm sewers. Heavy washes of water, mud and debris swept the street. The side ditches, intended to relieve the

sewers of surface water, became clogged and caused the water from the construction area to overflow abutting residential properties. These were thus inundated repeatedly, beginning in July, throughout the ensuing four months.

The injured owners sued Baker in the State courts in November 1959. Their complaints set forth the grading operations by Baker just related, including the installation of the retaining wall, and charged that the effect was to collect the surface waters of the tract and release them in concentrated form into the street and ultimately upon the claimants. Right of recovery was premised upon the invasion of their properties by Baker: (1) willfully, (2) through negligence in clearing the site with respect to drainage, and (3) by the creation and maintenance of a nuisance on the Baker tract. American's refusal to defend the actions or pay the compromise amounts was rested on its contention that the liability asserted against Baker on these claims did not arise from an "accident", but rather from the negligence of Baker, a risk American says was not underwritten in the policy.

■■ An insurer's duty to defend an action in accordance with the terms of its policy is to be gathered from the face of the complaint. Glens Falls Indemnity Co. v. Atlantic Building Corp., 199 F.2d 60, 61 (4 Cir. 1952). On the other hand, the insurer's liability to indemnify the insured for an amount paid in settlement must be determined from the evidence offered in the suit brought by the insured against the insurer for reimbursement. American Casualty Co. v. Denmark Foods, 224 F.2d 461, 464 (4 Cir. 1955). In the latter determination, what would be the effect, if any, of a judgment rendered in favor of the claimant against the insured after trial, instead of a settlement, does not have to be decided in this case.

■■ Defense of a claimant's action against the insured involves, of course, the incurrence of expenses by the insurer quite apart from the payment of a settlement. The two obligations are not interdependent. The insurer may be bound to defend and yet not be responsible for satisfaction of the settlement, for the proof in the suit against the insurer for indemnification might not establish the injury as an accident. This, we have previously said, is the law of South Carolina. C. Y. Thomason Co., v. Lumbermens Mutual Casualty Co., 183 F.2d 729 (4 Cir. 1950); American Casualty Co. v. Denmark Foods, supra, 224 F.2d 461. As jurisdiction of the District Court was pitched on diversity of citizenship, South Carolina's law controls here. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

■ An accident is, we conclude, an *unintended and unexpectable injurious happening*. The misfortune is sometimes described as an "unavoidable accident". This phrase appears redundant, for "accident" itself implies, inter alia, an *incident* which was unavoidable. "Sudden" is not necessarily a part of the definition since the duration of the cause or consequence, it would seem, need not be a factor of an accident. "Inevitable" is hardly the precise adjective as it infers something bound to come about. Obviously, the definition does not comprehend the outcome of deliberate commission or omission. While "accident" may include an act of God, it is generally used to denote a cause or result referable to human behavior. The terms "pure accident", "mere accident" or "simple accident" are occasionally employed; these have been worthy attempts to strip "accident" of any implication of negligence. Larrow v. Martel, 92 Vt. 435, 104 A. 826 (1918); McEwen v. Central of Georgia Ry. Co., 127 Ga. 246, 56 S.E. 289 (1906).

■ Ordinarily, "accident" would exclude an event caused by negligence or nuisance alone and followed by a foreseeable or natural consequence, for then neither the cause nor the effect is unexpectable. See Hutchinson Water Co. v. United States Fidelity & Guaranty Co., 250 F.2d 892, 893 (10 Cir. 1957). However, the object and terms of the instant

insurance policy, we think, require the conclusion that if the negligence or nuisance is accompanied by an unintended and unexpectable factor effectively contributing to the cause or consequence of the incident, then the incident can be an accident within the policy coverage. Bundy Tubing Co. v. Royal Indemnity Co., 298 F.2d 151, 153, 154 (6 Cir. 1962); cf. C. Y. Thomason v. Lumbermens Mutual Casualty Co., supra, 183 F.2d 729, 733.

This is essentially the concept of an accident adopted by the Supreme Court of South Carolina. Ducker v. Central Surety & Ins. Corp., 234 S.C. 228, 107 S.E.2d 342 (1959). As our definition of "accident" is applicable to both the cause and consequence constituting the occurrence, we have no reason to consider them separately, for the policy in suit is not phrased with any such distinction and the South Carolina decisions permit none. Goethe v. New York Life Ins. Co., 183 S.C. 199, 190 S.E. 451 (1937); cf. Landress v. Phoenix Mut. Life Ins. Co., 291 U.S. 491, 54 S.Ct. 461, 78 L.Ed. 934 (1934). South Carolina has expressly noted that an accident may be a continuing event. Ducker v. Central Security & Ins. Corp., supra, 234 S.C. 228, 107 S.E. 2d 342, 343.

■ I. A reading of the State court pleadings with this definition in mind would suggest that an accident might be involved. While the count based on willfulness could not be taken even as intimating accident, the consequences averred in the negligence and nuisance counts are so unexpectable that, we think, the circumstances alleged indicated the presence of accident, with or without the added element of negligence or nuisance. The "accident" in the pleadings which would require the insurer to defend does not mean only such an accident as would absolutely excuse the insured, e. g., Beit v. United States, 260 F.2d 386, 388 (5 Cir. 1958), but it refers to an accident within our definition which could include an occurrence embracing negligence or nuisance.

At all events, the declarations did not preclude the presence of an accident, and if the allegations left the answerability of the insurer in doubt, that doubt itself generated a duty to defend. London Guarantee & Accident Co. v. C. B. White & Bros., 188 Va. 195, 49 S.E.2d 254, 256 (1948).

■ II. The issue of the liability of the insurer, without distinguishment between the duty to defend and the obligation to pay the compromise, was submitted to a jury over the objection of American. Although the first issue was for the Court as a matter of law on the basis of the State court pleadings, and the second for the trier of fact upon the evidence in the instant action, submission of the entire case to the jury was harmless. By instructions the jury was limited to a consideration of whether in fact the injury was an accident, and the Court by including the cost of the defense in its judgment did in actuality rule that the pleadings revealed a duty on the insurer to defend.

The trial court accurately charged the jury upon the meaning of "accident" and the evidence established the facts as we have earlier recounted them. With the District Judge, we think they adequately supported the burden of the insured, Baker, to prove the injuries not willful. They also well sustained the further obligation of the insured to show the invasion of the claimants' premises was something not to be expected from the work at the shopping center. For, assuming that the shopping center site had been negligently cleared, the heavy, unprecedented rainfall was certainly an unintended and unexpectable factor which contributed effectively to the mud and water damage suffered by the nearby property owners. The property injury was therefore, an accident within the meaning we have given the term as used in the instant insurance contract.

The verdict and judgment for the insured should not be disturbed.

Affirmed.